## Frith v. Commonwealth.

Nov. 5, 1941.

E. R. Denney for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Reversing.

Appellant, Margie Frith, was indicted by the grand jury of Rockcastle county at its January 1940 term on a charge of murdering her son-in-law, Wilbur Kavanaugh. At the August term she was convicted of voluntary manslaughter with punishment fixed at confinement in the state reformatory for a period of two years. From a judgment based on this verdict she has prosecuted this appeal.

Appellant and her husband operated a tourist camp and filling station on U. S. highway 25 in Rockcastle county a short distance south of Berea, Kentucky. The filling station consisted of gasoline pumps placed in front of the residence. Lucile Frith, the daughter of appellant, married the deceased, Wilbur Kavanaugh, in December 1937. Shortly after their marriage Kavanaugh commenced to use alcoholic beverages to excess and it appears that he was in constant turmoil with the other members of the household, particularly his wife and mother-in-law. In the evening of September 15, 1939, about 9:30 or 10 o'clock P. M. appellant left the residence for the purpose of locking the gasoline pumps and closing her place of business for the night. Kavanaugh, who was drinking at the time, was sitting a few steps to the side of the filling station. It appears from the evidence that he swore at appellant when she started to lock the pumps and without provocation hit her on the head and knocked her against the screen door, after which he resumed his former position in the chair. Appellant re-entered the house, procured a pistol and standing at or near the door of the house, fired three shots in the direction of Kavanaugh. One of the shots either glanced from the ground or from the chair and entered his abdomen, resulting in his death the following day.

Complaint is made that the court erred (1) in refusing to instruct on the whole law of the case; (2) in admitting incompetent evidence offered by the commonwealth; (3) in refusing to admit competent evidence offered by defendant. It is the contention of appellant that the court should have given an instruction incorporating the theory that if the jury should believe from the evidence that the daughter of the accused, prior to the day on which the deceased lost his life, had been assaulted and beaten by her husband so as to endanger her life, or that he had inflicted upon her person great bodily injury, and that accused was apprised of the fact and that under these circumstances the accused in sudden heat and passion shot the deceased when not in necessary self-defense and without malice, she was guilty of manslaughter.

The second instruction given the jury is as follows:

"Or if the jury do not believe from the evidence in this case beyond a reasonable doubt that the defend-

ant has been proven guilty of wilful murder as charged in the indictment, and set out and defined in instruction No. 1, but shall believe from the evidence that in this county and before the finding of the indictment herein, the defendant Margie Frith, did unlawfully, wilfully and feloniously, but without malice, in sudden affray or in sudden heat and passion, shoot, and kill the deceased Wilbur Kavanaugh with a pistol, a deadly weapon, and this not in her necessary or apparently necessary defense, then the jury will find the defendant guilty of voluntary manslaughter a lesser offense included in the indictment, and fix her punishment at confinement in the state penitentiary for not less than two nor more than 21 years in the discretion of the jury.''

It will be noted that the court instructed the jury to find her guilty of manslaughter if they believed that she shot in sudden heat and passion without the additional requirement that the sudden heat and passion should have been inspired by deceased's conduct toward his wife. We believe that instruction to have sufficiently presented the theory incorporated in the instruction asked for. But even if she had been entitled to a separate instruction on the theory contended for, the failure of the trial court to so instruct would not have been prejudicial, because she was convicted of manslaughter and sentenced to the shortest term allowable under a manslaughter instruction.

Complaint is made of instruction 3 in that it does not expressly define the words ''grossly careless.'' But the instruction itself defined the words in such a manner that it was impossible for the jury to have been misled. The instruction recited that ''if the defendant knew or by the use of reasonable care might have known that the way and manner in which she used or handled said pistol, if she did so, was dangerous to life, although the defendant did not intend to shoot and kill deceased she should be found guilty of voluntary manslaughter.'' In that manner the words ''grossly careless'' were explained to the jury in a clear and concise manner. Since the judgment must be reversed for the reason hereinafter shown and as a consequence another trial will ensue, we have carefully considered all the instructions although no other complaint of them has been made. It

will be noted that instruction No. 2 copied above failed to incorporate the words "beyond a reasonable doubt" after the second use of the word "evidence." This omission renders the instruction erroneous. On the next trial the court will correct this error. The instructions thus corrected will sufficiently incorporate the whole law of the case.

Complaint is made of various questions and answers which it is alleged were incompetent. The commonwealth introduced by one witness evidence that the defendant's moral reputation was bad since the occurrence of the homicide; that such reputation was bad because some people blamed her for the shooting; and that previous to the homicide he had never heard her reputation discussed. When the accused offers himself as a witness, his moral reputation, the same as that of any other witness, may be proved to impeach his testimony, Noe v. Commonwealth, 227 Ky. 578, 13 S. W. (2d) 763, and such reputation may be shown as of the date of the trial. But where it appears that the bad reputation grew out of the commission of the offense for which accused is on trial, it may not be introduced for any purpose. Smith v. Commonwealth, 140 Ky. 599, 131 S. W. 499; Gabbard v. Commonwealth, 159 Ky. 624, 167 S. W. 942. Since no other witness testified that the accused's moral reputation was bad, we are of the opinion that this evidence was prejudicial and for that reason the case must be reversed.

It is unnecessary for us to discuss the other complaints in respect to the competency of the evidence, since the alleged errors may not occur at the next trial.

Judgment reversed for proceedings consistent with this opinion.