Fred LEWIS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 12, 1958.

Shumate & Shumate, Thomas D. Shumate, Richmond, for appellant.

Jo M. Ferguson, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

STEWART, Judge.

This appeal is by Fred Lewis from a judgment entered on a verdict convicting him of malicious cutting and wounding with intent to kill and imposing a sentence of imprisonment for ten years. He was likewise indicted under the Habitual Criminal Statute, KRS 431.190, it being charged that he had previously been convicted of two other felonies.

These grounds are urged for reversal: (1) Competent evidence offered by Lewis was erroneously excluded; (2) an improper separation of the jury occurred; and (3) the closing argument of the Commonwealth's attorney was prejudicial to Lewis' substantial rights.

The crime of which Lewis was indicted supposedly took place in the Bell County jail located at Pineville. Lewis entered a motion for a change of venue which was sustained and the case was transferred to the Madison Circuit Court for trial. The evidence concerning the events that occurred immediately prior to and at the time Lewis allegedly cut James D. Tribell, who was the prosecuting witness, is highly conflicting. According to Tribell's testimony, he

had gone into the cell in the jail where Lewis was confined for the purpose of conferring with him. The charge then pending against Lewis and for which Tribell, an attorney, had been employed to defend him was that of rape. Tribell stated that with no provocation Lewis by some means got possession of the knife he had on his person and cut him with it. Lewis, on the other hand, testified that Tribell became angry at him because he could not pay him more money on his fee and attacked him with a knife which he was able to knock from Tribell's grasp, and that during the struggle to obtain it he managed to get it and cut Tribell in self-defense.

The first complaint relates to the rejection of certain evidence offered by Lewis which, had the court allowed it to be considered, would tend to show Tribell became intimate with Lewis' ex-wife while Lewis was confined in jail. Lewis had long been divorced from his ex-wife but there was testimony in effect that, before he was arrested and incarcerated on the rape charge, he and she were living together on friendly terms, and he claimed they intended to be remarried. At the trial, according to a statement then made by one of Lewis' attorneys, the sole purpose put forth in offering this character of evidence was in order to impeach Tribell's credibility as a witness. The defense counsel added that it was contemplated the trial judge would give the proper admonition required when such proof was introduced. The lower court ruled it was incompetent to attack a witness in the manner resorted to and rejected all testimony which was designed to do so. Avowals were made and these are in the record.

We will not discuss this particular determination of the trial judge for the simple reason that on this appeal two altogether different theories are advanced for the first time why the lower court should have permitted this evidence to be introduced. One is that, since the proof is in conflict as to whether Tribell or Lewis started the altercation that ensued between them, such evidence would tend to establish a state of mind on Tribell's part of hostility toward Lewis. On this point it is contended Tribell's affection for Lewis' ex-wife would make him jealous of Lewis and would motivate him to be the aggressor in a fight. However, the same theory could work the other way round, as it was shown Lewis was informed Tribell had been associating with his ex-wife in a rather intimate fashion and one could easily believe this knowledge could so incense him that he would attack Tribell when a suitable opportunity presented itself, with the thought of exterminating him. This latter theory seems more persuasive than the one advanced by Lewis. Plainly, as regards this type of proof, the jury would be compelled to conjecture as to the effect of Tribell's relationship with Lewis' ex-wife on the two minds involved.

■ The other theory which attempts to justify the admissibility of this type of evidence, and this one is utterly inconsistent with that mentioned above, is that it could be said that Lewis, because he knew Tribell was keeping company with his ex-wife, became the victim of a seizure of emotional insanity and for this reason could not restrain his acts of violence toward Tribell when the two met. This plea, as well as the previous one, seems to be an afterthought, because, as we have pointed out, neither of them was put forward at the trial. Ordinarily when an issue is presented here before the lower court has passed on it we decline to take cognizance of it. In this instance we are addressing ourselves to the questions presented because, since we are affirming the judgment, we conclude they should not go unanswered.

■ Certainly reliance upon emotional insanity is incompatible with a plea of self-defense, which was the only ground Lewis interposed in circuit court in his behalf. There is no language whatsoever in the proof to indicate, nor was the least intimation made to the lower court, that Lewis based his defense upon any act of insanity.

In Shearer v. Commonwealth, 302 Ky. 250, 194 S.W.2d 494, 496, it was held that the refusal to submit a defendant's request for an instruction on emotional insanity was not error where he had resisted a charge of murder solely on the basis of a self-defense. On that point the opinion in that case made this pertinent statement: "Since there was no defense made by appellant (Shearer) that embodied any kind of insanity plea, it obviously would have been erroneous for the trial court to have instructed the jury on any theory involving a defense of emotional insanity."

■ The evidence rejected by the trial court (and we believe it was properly rejected) does not seem to have affected the result. The jury was extremely lenient in its verdict. Under the instructions they could have found Lewis guilty on three charges of felony under the Habitual Criminal Statute and imposed a life sentence in the penitentiary. However, it appears that two of the charges were ignored and Lewis was found guilty of the particular offense involving Tribell and sentenced to ten years' imprisonment.

■ The complaint next raised is that the jury was allowed to separate and as a consequence Lewis' substantial rights were violated. This assertion is without factual foundation. Succinctly stated, what happened without contradiction was that the foreman merely stepped outside the jury room a few feet, after the case had been submitted, and asked a deputy sheriff who had the jury in charge to inquire of the judge whether Lewis could be given a sentence of less than life under one of the instructions. It is our view the facts do not show an actual separation occurred within the purview of KRS 29.303 or Section 244 of the Criminal Code of Practice. Furthermore, Lewis does not explain that what took place was prejudicial to him. What transpired was so obviously harmless that we deem it unnecessary to discuss it.

The final ground urged for reversal is that the Commonwealth's attorney stated in his argument to the jury, at one time, that Lewis had been indicted in the Bell Circuit Court for five or six offenses and, at another time, that he had been accused in the same court with the commission of seven crimes, all of which were pending against him. The defense counsel entered objections to these statements and then moved the court each time to set aside the swearing of the jury. The objections and motions were overruled, exceptions to the rulings being reserved. The record reveals that Tribell's testimony enumerated six charges, not including the one involved in this appeal, which were undisposed of against Lewis, and did this to explain the many steps he had taken in the various criminal charges preferred against Lewis in the preparation of his defenses thereto. No question was raised at that time concerning the competency of this evidence. More than that, other facts about these cases were also elicited from this witness on cross-examination by the defense counsel.

■ In Simmons v. Commonwealth, 207 Ky. 570, 269 S.W. 732, it was held that remarks uttered by the Commonwealth's attorney, based upon incompetent evidence which was admitted without question, were not objectionable. See also Philpot v. Commonwealth, 205 Ky. 636, 266 S.W. 348. It was clearly established that the Commonwealth's attorney did not go outside the record in making the remarks complained of; in fact, we may add with emphasis that these remarks were based upon evidence in part introduced by defendant's counsel. We conclude the Commonwealth's attorney had a perfect right to make reference to and discuss the pending criminal charges against Lewis for the reason that they were supported by the evidence.

We wish to add that the attorneys who prepared this case for appeal to this Court and briefed it in behalf of appellant were not the ones who tried it in circuit court.

Wherefore, finding no error in the record, the judgment is affirmed.